**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

ANNE LANDMAN,

     Plaintiff,

                                     Civil Action No.  1:19-CV-1367

vs.

RAY SCOTT, Colorado State Senator for
Senate District 7, in his individual and official
capacities,

     Defendant.

---

**VERIFIED AMENDED AND SUPPLEMENTAL COMPLAINT**

---

Plaintiff Anne Landman, by and through her attorneys Ashley I. Kissinger, J. Matthew Thornton, and Mark D. Wilding Jr. of Ballard Spahr LLP, in cooperation with the American Civil Liberties Union Foundation of Colorado ("ACLU"), and Mark Silverstein and Sara R. Neel of the ACLU, brings this Verified Amended and Supplemental Complaint against Defendant Ray Scott, individually and in his official capacity as a Colorado State Senator, and alleges as follows:

## INTRODUCTION

1.     Protecting the right to communicate lawfully in digital spaces is critically important in the modern era, especially when those spaces are controlled by politicians.  Two years ago the United States Supreme Court observed that, "[w]hile in the past there may have been difficulty in identifying the most important places (in a spatial sense) for the exchange of views, today the answer is clear.  It is cyberspace—the 'vast democratic forums of the Internet'

in general, and social media in particular." *Packingham v. North Carolina*, 137 S. Ct. 1730,

1735 (2017) (quoting *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 868 (1997)).

2.      Indeed, social media platforms like Facebook and Twitter have become "the

*principal* sources" for public discourse. *Packingham*, 137 S. Ct. at 1737 (emphasis added).  As

such, these platforms provide "perhaps the most powerful mechanisms available to a private

citizen to make his or her voice heard." *Id.*

3.      In this case, Defendant Ray Scott, a Colorado State Senator, silenced the voice of

the plaintiff, Anne Landman, by blocking and banning her from the interactive portions of his

official Facebook page and Twitter account and deleting her comments.  Ms. Landman is an

outspoken Colorado resident who regularly writes about Colorado politics on her blog,

http://www.annelandmanblog.com.  She also uses Facebook and Twitter to interact with her

fellow constituents and elected leaders in local and state government.  She visits her elected

officials' social media pages to obtain information, ask questions, and share her views on policy

with her representatives and fellow constituents.

4.      Defendant Scott is Ms. Landman's representative in the Colorado Senate.  Ms.

Landman follows Senator Scott's Facebook page and also follows the senator on Twitter.  Until

2017, she was able to interact with Senator Scott and others in these spaces.  Then, in the Spring

of 2017, Ms. Landman began publishing more critical articles, posts and comments on or about

Senator Scott's social media accounts.  For example, on April 24, 2017, Ms. Landman

commented directly on Ray Scott's post about climate science and, upon information and belief,

Senator Scott deleted Ms. Landman's comment from his Facebook page.

5.      Several weeks later, Ms. Landman wrote a blog article titled "Ray Scott Shocks Constituents with Displays of Poor Grammar, Lack of Knowledge in Social Media Exchanges," which was critical of Senator Scott's position regarding climate change.  *See* http://annelandmanblog.com/2017/06/ray-scott-shocks-constituents-with-displays-of-poor-grammar-lack-of-knowledge-in-social-media-exchanges/ (last visited May 8, 2019).  She posted the article on social media, including on her own and others' Facebook profiles.  In response, the senator banned Ms. Landman from his official Facebook page and later blocked her from interacting with his official Twitter account.

6.      Senator Scott refused Ms. Landman's many requests, made over a two year period, for him to "unblock" and "unban" her.  As a result of having been banned and blocked, Ms. Landman has been unable to participate in representative government and the public discussions that take place regularly on Senator Scott's official Facebook page and Twitter account.  Ms. Landman also has been prohibited from participating in discussions in which other Facebook users have publicly derided her personally.

7.      As virtually every court to consider the question has recognized, this sort of government censorship by an elected official in a public forum – censorship based on the speaker's viewpoint – is strictly forbidden by the First Amendment.  *See, e.g.*, *Davison v. Randall*, 912 F.3d 666 (4th Cir. 2019) (affirming court's holding, after bench trial, that elected county official violated a constituent's First Amendment rights by banning him from the official's Facebook page based on the views expressed in the constituent's posts); *One Wis. Now v. Kremer*, No. 17-cv-0820-wmc, 2019 U.S. Dist. LEXIS 8828 (W.D. Wis. Jan. 18, 2019) (holding several state representatives violated an advocacy organization's First Amendment

rights by blocking the organization on Twitter in response to organization's criticisms of the

representatives); *Knight First Amendment Inst. at Columbia Univ. v. Trump*, 302 F. Supp. 3d 541

(S.D.N.Y. 2018) (holding President Trump violated the First Amendment by blocking Twitter

users with whom he disagrees); *Garnier v. Poway Unified Sch. Dist.*, No. 17-cv-2215-W (JLB),

2018 U.S. Dist. LEXIS 87987 (S.D. Cal. May 24, 2018) (finding allegations that school board

officials used "private social media accounts as a tool for governance" and then blocked

constituents with differing viewpoints sufficient to withstand motion to dismiss).

## JURISDICTION AND VENUE

8.      This action arises under the Constitution and laws of the United States and is

brought under 42 U.S.C. § 1983.  Jurisdiction is conferred on this Court under 28 U.S.C. §§ 1331

and 1343.

9.      The Court has supplemental jurisdiction over Ms. Landman's state constitutional

claims under 28 U.S.C. § 1367.

10.      This Court has authority to grant declaratory and injunctive relief and award

nominal damages under 28 U.S.C. §§ 2201-02 and 42 U.S.C. § 1983.

11.      Venue is proper in this district under 28 U.S.C. § 1391(b)(1) and (b)(2) because

Senator Scott resides in this district and the events and omissions giving rise to the claims

asserted herein occurred in this district.

## PARTIES

12.      Plaintiff Anne Landman is a resident of Colorado Senate District 7 in Grand

Junction, Colorado.

- 4 -

13.     Defendant Ray Scott is a resident of the State of Colorado.  In 2014, Scott was elected to the Colorado Senate, representing Colorado Senate District 7.  He was re-elected in November 2018 and is currently serving a four-year term as Colorado State Senator for that district.  Prior to serving in the Colorado Senate, Scott served as a State Representative for Colorado House Districts 54 and 55.  At all times relevant to this Complaint, Senator Scott was acting under color of state law in his capacity as a Colorado State Senator.  He is sued in his official and individual capacities for declaratory and injunctive relief and nominal damages.

## FACTUAL ALLEGATIONS

**I.      Anne Landman is an engaged citizen who speaks out on public policy issues.**

14.     Plaintiff Anne Landman has lived in Grand Junction since moving there in 1982 when she was 26 years old.  She is now 62 years old and continues to be actively engaged in civic issues in her local community.

15.     Ms. Landman's interest in advocating for important public policy issues stems from her personal experience watching people suffer from the horrific effects of smoking tobacco.  She began her career as a respiratory therapist working in hospitals and in-home settings.  The suffering she observed during her work with patients during this period led her to become active with organizations advocating for laws establishing smoke-free public spaces.

16.     As a result of her advocacy on these issues, in 2005, Ms. Landman was invited to work as a researcher at The Center for Tobacco Control Research and Education at the University of California at San Francisco.  In this position, Ms. Landman spent fifteen months researching and writing on the topic of tobacco's negative societal impacts.

17.     Ms. Landman's next job was working as a blogger for the Center for Media and Democracy in Wisconsin.  She spent six years in this position, and she eventually became the organization's managing editor.

18.     Ms. Landman is now largely retired and remains interested in public policy issues that affect the health and lives of American citizens.

19.     Ms. Landman is and has been actively engaged in public policy and political issues.  To stay informed, Ms. Landman often relies on her elected officials' social media pages, including on Facebook and Twitter.  Ms. Landman also uses social media to interact with and petition elected officials and to engage in public debate.  Engaging with elected officials on their official social media pages has proven an efficient and effective way for her to receive information about local issues, discuss issues with other constituents, and have her voice heard.

## II.     <u>Social Media – The Basics</u>

### A.     *Facebook Profiles, Groups, and Pages*

20.     Facebook is an online social media platform with approximately 2.38 billion users worldwide.  *See* https://www.statista.com/statistics/264810/number-of-monthly-active-facebook-users-worldwide/ (last visited May 8, 2019).

21.     Facebook users can create "profiles," "groups," or "pages" to interact with others in the Facebook community.  Each platform – whether a profile, group, or page – has its own unique benefits and limitations.

22.     Facebook "profiles" allow individual users to share information with and stay connected to friends and family.  *See* https://www.facebook.com/help/337881706729661?helpref=faq_content (last visited May 8,

2019).  Because they are predominantly personal in nature, Facebook profiles are, by default, private.

23.     Facebook "groups" allow users "to share their common interests and express their opinion."  *See* https://www.facebook.com/notes/facebook/facebook-tips-whats-the-difference-between-a-facebook-page-and-group/324706977130/ (last visited May 8, 2019).  Facebook groups can be made publicly available to anyone, restricted to only those individuals whom the group allows, or kept entirely private.  *Id.*

24.     Facebook "pages" – in contrast to Facebook profiles and groups – are "public profiles that let artists, public figures, businesses, brands, organizations and nonprofits" connect to and interact with fans, customers, and constituents.  https://www.facebook.com/help/search/?q=hometown (last visited May 8, 2019).

25.     Facebook pages are "public spaces" organized by category including, but not limited to, pages for government officials and politicians.  *See* https://www.facebook.com/notes/facebook/facebook-tips-whats-the-difference-between-a-facebook-page-and-group/324706977130/ (last visited May 8, 2019).  Unlike Facebook profiles and groups, Facebook pages are "visible to everyone on the internet by default."  *Id.*

26.     Facebook users can "follow" or "like" Facebook pages.

27.     A user who "follows" a Facebook page receives updates about the page.  https://www.facebook.com/help/171378103323792?helpref=faq_content (last visited May 8, 2019).

28.     A user who "likes" a Facebook page also receives updates about the page, but also has the page added to the "About" section of their Facebook profile.  *Id.*  In some instances,

a user who likes a page will have their name or profile picture shown on the page or in ads about the page.  *Id.*

**B.**     ***Setting up a Facebook Page, Posting Content, and Moderating Public Discussions***

29.     To set up a Facebook page, a user (the "Administrator") must first designate the page's category.  Whichever category the Administrator designates is displayed in the Information section of the Facebook page on the left-hand column.

30.     Candidates and nominees for elected or appointed office may categorize their pages as "Politician" pages.  *See* https://politics.fb.com/learn-the-basics/#component-1-create-your-page (last visited May 8, 2019).  If so elected or appointed, that person can change the page's category from Politician to "Government Official."  *Id.*  Once the appropriate category has been selected, the Administrator must name the page and add in any other content he or she deems appropriate.

31.     Once the Facebook page has been finalized, the Administrator (or any other persons the Administrator authorizes) can begin posting content to the page.

32.     Posts made by a government official to his or her Facebook page are, by default, viewable by the public, and anyone can choose to "follow" or "like" the official's page.  As demonstrated in the screenshot of Senator Scott's page below, Facebook users can "Comment" on (A), "Like" (B), or "Share" (C) the government official's posts.



33.     Commenting on a post initiates (or adds to) a public discussion about the post's content.  Comments made about a post are, by default, visible to all Facebook users who visit the Facebook page.  Facebook users can review the comments, "Like" them (D), and "Reply" with their own comments (E).

34.     Administrators have several tools for moderating comments and replies posted by other Facebook users on the Facebook page.  *See generally*, https://www.facebook.com/help/248844142141117/?helpref=hc_fnav (last visited May 8, 2019).  Facebook's "Page Moderation" tool, for example, allows Administrators to prevent certain words, such as profanity, from appearing on the page.

35.    Facebook also allows Administrators to hide or delete particular comments made in a Facebook page's comment thread.  When an Administrator "hides" a comment, that comment is hidden from most viewers of the thread but remains visible to the person who wrote it and that person's Facebook friends.  *Id*.  In contrast, when an Administrator "deletes" a comment, the comment is permanently removed from the comment thread.  *Id.* While Facebook may remove deleted content from its site, it specifically disclaims that "some things can only be deleted when you permanently delete your account."

https://www.facebook.com/help/356107851084108?helpref=uf_permalink

36.    Facebook also allows Administrators to unhide comments that were previously hidden.  https://www.facebook.com/help/185897171460026?helpref=related. Administrators can also ban or remove a particular Facebook user from a Facebook page.  "Banning" a Facebook user prevents the user from posting to the page or interacting with (*e.g.*, liking or commenting on) posts published by others to the page.  *Id.*

37.    "Removing" a Facebook user removes the person from the list of those who have "liked" the page.  *Id*.  Because Facebook considers pages "public spaces," removing a user from a Facebook page does not prevent the user from re-liking the page thereafter.  *Id.*

38.    In addition to the tools available to Administrators, Facebook automatically organizes comment threads to prevent a Facebook page from being overwhelmed by off-topic comments and replies.  For example, as illustrated above, Facebook users by default see only a

few lines of the "Most Relevant" comments and replies in the comment thread.  This feature

prevents Facebook users from "trolling"[1] or "spamming"[2] the Facebook page.

### C.    *Facebook's Town Hall Feature*

39.    Government officials regularly use Facebook pages to connect with voters and

their constituents.  People from around the globe turn to Facebook to "find, follow and connect

with candidates and elected officials."  *See* https://politics.fb.com/ (last visited May 8, 2019).

40.    According to the National Conference of State Legislatures ("NCSL"), Facebook

is "one of the largest sources of political news for the American people."  NCSL, *Facebook*

*Guide for State Legislators* at 7,

http://www.ncsl.org/Portals/1/Documents/press/FB_NCSL_Guide_July2017.pdf (last visited

May 8, 2019).

41.    Indeed, the rising popularity of constituents using Facebook to connect with

government officials has led Facebook to implement a feature called "Town Hall."  Town Hall

allows constituents to, among other things:

- See the names and contact information of local, state and federal government officials representing them;

- Connect and interact with their government officials by following them; and

- Contact their government officials directly through Facebook.

---

[1] "Trolling" means "to antagonize (others) online by deliberately posting inflammatory, irrelevant, or offensive comments or other disruptive content."  https://www.merriam-webster.com/dictionary/troll (last visited May 8, 2019).

[2] "Spamming" means "unsolicited usually commercial messages (such as e-mails, text messages, or Internet postings) sent to a large number of recipients or posted in a large number of places." https://www.merriam-webster.com/dictionary/spam (last visited May 8, 2019).

https://www.facebook.com/help/278545442575921?helpref=faq_content (last visited May 8, 2019).

42.     Government officials must affirmatively elect to be part of Facebook's Town Hall.  To participate in Town Hall, the government official must: (i) designate the Facebook page as belonging to a "Government Official"; (ii) use Facebook's "Politician" template to format the Facebook page; and (iii) include on the Facebook page the description of the elected official's current government position.  https://www.facebook.com/help/479292349083513 (last visited May 8, 2019).

**D.     *Twitter***

43.     Twitter is an online social media platform that enables users to "communicate and stay connected through the exchange of quick, frequent messages." https://help.twitter.com/en/new-user-faq (last visited May 8, 2019).  In 2018, Twitter had approximately 68 million monthly active users in the United States alone.  *See* https://www.statista.com/statistics/274564/monthly-active-twitter-users-in-the-united-states/ (last visited May 8, 2019).

44.     Elected officials – including President Trump – regularly use Twitter to communicate with their constituents, who themselves use Twitter to "connect directly and immediately with elected officials and the issues they're most passionate about . . . ." https://archive.org/details/TwitterGovElectionsHandbook/page/n3 (last visited May 9, 2019).

45.     To participate on Twitter, each "user" must register a unique "username," which is "always preceded immediately by the @ symbol."  https://help.twitter.com/en/new-user-faq; https://help.twitter.com/en/glossary (last visited May 8, 2019).

46.     Once the username has been created, Twitter users can customize their Twitter account by adding, among other things, a short "bio," a profile picture, and their geographic location.  Below is a screen shot of the Twitter account Senator Scott created, @ScottforColo:



47.     To communicate, Twitter users can "tweet" their own content.  A "tweet" is a message posted via Twitter that may contain photos, videos, links, and up to 280 characters of text.  A user's tweets are displayed on his or her "timeline," along with the tweets of other Twitter users that user has chosen to "follow."  *See* https://help.twitter.com/en/new-user-faq.

48.     Twitter users can interact with each other's tweets in a variety of ways.  A "Retweet" is the act of forwarding another's tweet to one's own followers (thus posting that tweet to the followers' timelines).  *Id*.  Users can "reply" to another's tweet, creating a comment thread similar to the comment thread created on a Facebook page.  Users can also "like" each other's tweets.  *Id.*

49.     Each tweet includes the tweeter's username and account picture, the tweeted content, the date and time the tweet was submitted, and the number of times the tweet has been replied to, retweeted, or liked by other users.  For example, Senator Scott recently tweeted this:



50.     The user can choose to adjust his or her account settings to make certain parts of that user's account private, including who is able to see that user's tweets and retweets. https://help.twitter.com/en (last visited May 8, 2019).  Generally, Twitter users' timelines are visible not only to other Twitter users, but to everyone with internet access, including non-Twitter users.  While non-Twitter users can see a user's account, they cannot interact with users on the Twitter platform and may not see tweets in real time.  *Id.*

51.     A Twitter user can also elect to "block" other users' access to their timelines. When a Twitter user is blocked, they are no longer able to see or reply to the blocking user's

tweets, retweet the blocking user's tweets, view the blocking user's list of followers, or use the Twitter platform to search for the blocking user's tweets.  *Id.*

52.     While users are not notified when they are blocked, a user can see whether they are blocked by visiting the blocking user's Twitter account.  If blocked, the user will see a message indicating that the other user has blocked them from following the account and viewing the tweets associated with the account.  *Id.*  The following is an example of such a message:



## III.     Senator Scott's Official Facebook Page and Twitter Account

53.     Senator Scott operates both a Government Official Town Hall Facebook page and a Twitter account in his official capacity as a Colorado State Senator.

54.     Defendant Scott also maintains a personal Facebook profile.  *See* https://www.facebook.com/rayscottcolorado (last visited May 8, 2019).  In order to access the

posts on his personal Facebook page, a user must send Defendant Scott a friend request and he must accept the request.  Defendant Scott's list of friends on his personal page is also maintained privately.

**A.**     ***The "Ray Scott for Colorado" Facebook Page***

55.     Senator Scott's official Facebook page is entitled "Ray Scott for Colorado."  *See* https://www.facebook.com/rayscottforcolorado/ (last visited May 8, 2019).

56.     That page identifies Scott as a "Government Official" and, specifically, as "Colorado Senator SD7":



57.     Upon information and belief, Senator Scott is the primary contributor to and administrator, editor, and moderator of his official Facebook page, which currently has over

2,400 followers.  The page is open to the viewing public, and Facebook users can "like" or "follow" the page to get real-time updates about information posted to it.

58.     Facebook administrators have the option of either permitting people to comment on posts or disabling the comment feature, which prevents the public from commenting or interacting with the post.  Senator Scott has chosen to permit the public to comment on posts on his official Facebook page.

59.     Senator Scott routinely posts to his official Facebook page regarding issues directly related to his public service as a State Senator.  For example, on April 8, 2019, Scott posted a photo of himself with Governor Polis at a bill signing.



60.     As another recent example, on April 27, 2019, Senator Scott posted on his official Facebook page a link to an article detailing the results of a bill that passed, but that Senator Scott

opposed.  The article detailed alleged job losses that resulted from the bill's passage.  Senator

Scott's post contends that his opposition to the bill was well-founded.



61.     Facebook administrators have the option of either permitting people to comment

on posts or disabling the comment feature, which prevents the public from commenting or

interacting with the post.  Senator Scott has chosen to permit the public to comment on posts on

his official Facebook page.

62.     Indeed, members of the public often comment on and interact with posts on

Senator Scott's official Facebook page.  For example, on April 17, 2019, Scott posted about a

specific piece of legislation that he opposed.  That post generated 40 comments and 9 shares.



63.    The comment thread included back and forth discussion between and among members of the public.

64.    Likewise, on April 29, 2019, Senator Scott posted an article detailing facts about the end of the legislative session.  That post resulted in at least 50 comments by users and was shared nine times.



65.     A "Contact Us" button appears prominently on the page and directs Facebook users to Senator Scott's official website, https://www.rayscottforcolorado.com/ (last visited May 8, 2019).  That website provides Senator Scott's official e-mail address, ray.scott.senate@state.co.us, and his official phone number.  Scott also posts on the Facebook page photos of himself acting in his capacity as a Colorado State Senator.

66.     Senator Scott chose to have his official Facebook page be part of Facebook's Town Hall, and he uses the page to communicate and engage in discussion with his constituents about district business.

**B.     *Senator Scott's Official Twitter Account, @ScottforColo***

67.     Senator Scott's official Twitter handle is @ScottforColo.  *See* https://twitter.com/SCOTTFORCOLO (last visited May 8, 2019).

68.     Scott's Twitter account identifies him as a "Colorado Senator" and displays his official website, https://www.rayscottforcolorado.com/, prominently below his picture.

69.     Upon information and belief, Scott is the primary contributor to and administrator, editor, and moderator of his official Twitter account, which currently has over 1,900 followers.  Although the account is open to the viewing public, Scott has blocked certain users, thus preventing them from viewing his tweets in their timelines and from interacting with his tweets.

**IV.    Ms. Landman is an outspoken critic of Senator Scott, and the senator has banned and blocked her from his social media accounts to suppress her viewpoint.**

70.     Ms. Landman has followed Senator Scott's work in public office – both when he held a seat in the Colorado House of Representatives and now in his capacity as a state senator.

She is a Democrat; he is a Republican.  Not surprisingly, their views on policy issues often do not align.

71.     Ms. Landman has criticized Senator Scott's policies and his work as a Colorado State Senator on his official social media accounts and in articles posted on her blog entitled "Anne Landman's Blog."  *See* http://annelandmanblog.com/.  While her comments to and about Scott have sometimes been fiercely critical, they have never been obscene, abusive, or defamatory.  Despite this, Senator Scott saw fit to block and ban her from his social media accounts because he does not agree with her viewpoint.  Upon information and belief, Senator Scott also deleted content Ms. Landman posted on his official social media accounts.

   **A.**     ***Senator Scott first blocked Ms. Landman's personal Twitter account @AnneLandman from his official Twitter account.***

73.     Senator Scott had fraught relationships with other Democratic members of his constituency besides Ms. Landman, including Claudette Konola, who ran against Senator Scott in his 2015 campaign.

74.     In early April 2017, Ms. Konola and Senator Scott were having a public argument about the 2016 election results and the prospects of the Democratic and Republican parties in the future.

75.     Ms. Landman posted the following reply to Senator Scott's tweets on the subject:



76.     Shortly after making this post, Ms. Landman discovered that Senator Scott had

blocked her personal Twitter account.

> **B.**     ***Senator Scott then blocked Ms. Landman from commenting on his official
> "RayScottColorado" Facebook page.***

77.     On April, 24, 2017 Ms. Landman posted the following comment in response to one of Senator Scott's posts about climate change of his Facebook page:

> "On his blog, Ray Scott for Colorado posts an article by paid climate change denier Alex Epstein, who tweeted to MA Attorney General Maura Healey after she subpoenaed documents from him, "F*ck off, Fascist"  http://wp.me/p2fbFr-23m . Is this the kind of guy Scott really wants to cite in his discussion of climate change?"

78.     Senator Scott either hid or deleted this comment as it is no longer visible on his page.  As of today, Senator Scott still has not restored Ms. Landman's comment.

79.     Several months later, on June 4, 2017, Ms. Landman wrote an article on her blog criticizing a post Scott made to his official Facebook page, as well as his responses to two constituents' replies to that post.  *See* http://annelandmanblog.com/2017/06/ray-scott-shocks-constituents-with-displays-of-poor-grammar-lack-of-knowledge-in-social-media-exchanges/. Senator Scott had written, among other things, that "you have cleaner water, air, and mortality rates brought to [us] by fossil fuels."  Ms. Landman concluded her blog post by vociferously criticizing Senator Scott:  "[A]s more of these dialogues between environmental experts and Senator Scott become public, it gets scarier that an elected official who is this ignorant of basic science and scientific methods, and who is so closed off from better educating himself on the subject, continues to hold a decision-making office in the state's legislature."  Ms. Landman posted a link to this article on her Facebook page and personal Twitter account @AnneLandman.

80.     When Ms. Landman next went to post something on Senator Scott's official Facebook page that summer of 2017, she discovered that he had "banned" her from the page – that is, although she was still able to view the page, she was no longer permitted to comment on the page or reply to other Facebook user's comments.

> **C.**     *Defendant Senator Scott then blocked Ms. Landman's other Twitter account @ThoughtOnBoard completely ending her ability to speak on his social media pages.*

81.     After Senator Scott blocked Ms. Landman's personal Twitter account, she continued to follow and respond to Senator Scott's tweets using another Twitter account she operates, @ThoughtOnBoard.

82.     For instance, at the same time Ms. Landman posted her critical June 4, 2017 blog article, she replied to one of Senator Scott's tweets using her @ThoughtOnBoard account, pointing out an upswing in progressive politics in Colorado:



83.     Finally, after responding critically to several more of Senator Scott's tweets, Ms.

Landman posted the following reply to Senator Scott official Twitter account, citing an article by

Slate highlighting the recent wave of judicial decisions recognizing public officials' social media

accounts as public forums subject to First Amendment protection:



84.     Within two weeks of Ms. Landman posing this Tweet and reply, Senator Scott

blocked her @ThoughtOnBoard account and effectively cut her off from all opportunities to

engage with him or her fellow constituents about the important public issues being discussed on

the interactive portions of Senator Scott's social media accounts.

    **D.**    ***With no Remaining Channels to Communicate on Senator Scott's Public Social
        Media Accounts, Ms. Landman has no Ability to Participate in Senator Scott's
        Public Dialogue With His Constituents.***

85.     As a result of Scott's Facebook banning and Twitter blocking of her, Ms.

Landman could not view or reply to posts on Senator Scott's Facebook page, respond to ad

hominem attacks made about her there by others, or view or respond to any of Scott's tweets

from either of her Twitter accounts.

86.     Given the degree to which Ms. Landman engages in Mesa County politics, Senator Scott's blocking and banning her from his official social media accounts has effectively silenced her in ongoing conversation between Scott and his constituents – those in Ms. Landman's own community.

87.     Moreover, not only did Senator Scott silence Ms. Landman's viewpoint, he doubled down on his viewpoint-discriminatory violation of Ms. Landman's First Amendment rights by permitting his supporters to post comments critical of her on his Facebook page and then encouraging and endorsing those negative comments by "liking" them, all the while knowing that Ms. Landman was unable to rebut, respond, or otherwise participate in the discussion due to his continuing ban.

88.     For example, after Senator Scott banned Ms. Landman from his Facebook page, the following commentary ensued, and Ms. Landman was unable to participate in the discussion:



**Ray Scott for Colorado**
June 27, 2018 · ⚙

Good morning to all Mesa County voters. I can't begin to express my deep gratitude for your support. I appreciate your belief in my ability to lead and it is humbling to say the least.

I told Dan Thurlow and his supporters last night that I appreciated their efforts and I look forward to uniting with them for a victory in November. If you supported Dan please join us in that effort I have nothing but respect for your hard work. I know we can make a huge difference come November and I need your help.

God Bless all of you and thank you!

⬤⬤ 83                                    25 Comments  5 Shares

👍 Like           💬 Comment           ↪ Share

New ▾

⬤  Write a comment...                    ☺ 📷 🖼 🎁
   Press Enter to post.

**Gary Cox** I'm pretty sure #resist Anne Landman had her hair on fire after the tally. I'm sure she will find a new way to throw a tantrum. Not enlightened but I think just a smug bully who prefers to hate instead of help.
Like · Reply · 44w                                        ⬤ 2

   **Scott Grattan** ⊖ ... says the guy singling out an individual in an attempt to shame and ridicule.
   Like · Reply · 44w                                     ⬤ 2

   **Gary Cox** Scott Grattan Cry me a river. Thee left wants to play hardball so lets see if they can handle the heat. How about we start with the upcoming Supreme Court Justice appointment. Watch the hair on fire crap coming our way but then check out the conclusion. By the way, who was it who contracted for the electronic sign downtown to slam Senator Scott. Sometimes its better to mind your own business.
   Like · Reply · 44w                                     😄 1

   **Scott Grattan** ⊖ "Sometimes it's better to mind your own business."

   Ironic.
   Like · Reply · 44w                                     ⬤ 1

   **Gary Cox** I was until provoked
   Like · Reply · 44w                😄 1

   **Scott Grattan** ⊖ Always great to hear from the ignorant masses.
   Like · Reply · 44w                                     ⬤ 1

   **Gary Cox** Glad your so enlightened. Shorthand for Bigot Bully.
   Like · Reply · 44w

**Linda Bale** Gary Cox veiled threat?
Like · Reply · 40w

89.     Another person posted the following to Senator Scott's page:



Senator Scott also "liked" this comment.

90.     By banning Ms. Landman from his official Facebook page and blocking her from his official Twitter account, Senator Scott deprived Ms. Landman of the ability to participate in the discussion with other members of the public in the designated public discussion area of his social media pages.  Because of being banned and blocked, Ms. Landman could not interact with or engage Scott in these public spaces, nor could she speak with her fellow constituents and others who posted there, all because Scott disliked the articles Ms. Landman posted criticizing his positions as a Colorado State Senator.

91.     Since being banned from Senator Scott's official Facebook page and blocked from his official Twitter page, Ms. Landman has called Scott's office multiple times to ask for an

explanation and to be unbanned and unblocked.  Neither Scott nor anyone from his office ever

returned her calls.

92.     On December 30, 2017, and then again on January 16, 2018, Ms. Landman

emailed Scott at his official senate email account requesting an explanation of why he banned

and blocked her from his official social media accounts.  She did not receive a response to these

inquiries.

93.     In March 2018, Ms. Landman attempted yet again to contact Senator Scott, this

time via Facebook Messenger, stating:

> Seeking the ability to comment on your FB page, since you list yourself as a
> Colorado State Senator and I'm a constituent.  Can you please change the settings
> so I can comment, or tell me why you have blocked me from commenting?
> Thanks.

Scott never responded to this inquiry either.

94.     Most recently, on April 30, 2019, Ms. Landman contacted Senator Scott by e-mail

and requested that he unblock and unban her from his Facebook and Twitter accounts.  At the

time of initiating this lawsuit, Ms. Landman remained blocked from Senator Scott's Facebook

page.  Likewise, the Twitter account tied to Ms. Landman's blog, @ThoughtOnBoard, also

remained blocked from the senator's official Twitter account.  Ms. Landman's personal Twitter

account is not currently blocked from the senator's official Twitter account.

95.     On information and belief, Senator Scott has banned other constituents from his

official Facebook page.  These constituents include Claudette Konola, who had previously run

against Scott in his first state senate election in 2014, and Martin Wiesiolek, who criticized Scott

after the senator decried an article critical of him in Grand Junction's Daily Sentinel as "fake

news."  *See* https://www.gjsentinel.com/opinion/editorials/the-new-public-

square/article_c9a2f87a-6971-11e9-b66c-20677ce85d90.html (last visited May 9, 2019).  On

information and belief, as of May 9, 2019, Mr. Wiesiolek remained banned from Senator Scott's

official Facebook page, and as of May 13, 2019, Ms. Konola remained banned as well.

**V.      Senator Scott has publicly admitted that he banned and blocked certain constituents
because they are critical of his politics.**

96.      On August 14, 2017, Ms. Landman, together with Mr. Wiesiolek and Ms. Konola,

filed a formal complaint against Senator Scott with the Colorado Senate Ethics Committee

concerning the "improper handling of [Scott's] communication with constituents."  They

requested that the Committee instruct Scott to unblock constituents, cease deleting constituents'

posts, and post a clear policy setting guidelines for discussions on his social media accounts.[3]

97.      On August 18, 2017, in a post responding to news coverage in the Grand Junction

Sentinel about his blocking and banning constituents on social media, Scott expressly

acknowledged that he banned from his Facebook page certain "critics" because he found the

content of their posts to be "unacceptabl[e]" and he wanted to stop them from "attacking [him]":

---

[3] On October 12, 2017, Senator Kevin J. Grantham, President of the Senate, wrote a letter to Ms. Landman stating that he, then-Majority Leader Chris Holbert, and then-Minority Leader Lucia Guzman concluded the complaint was "not meritorious and does not substantiate an ethical violation."  The complaint was dismissed without further investigation or action by the Senate, and the decision is not subject to appeal.



**Ray Scott for Colorado**
August 18, 2017 · ✿

Smear campaign exposed

Well, it looks like I'm under attack again from my friendly local newspaper, the Grand Junction Sentinel. I guess that's what I get for making its bully-boy publisher look foolish in the "fake news" flap. The publisher seems determined to damage my reputation at every turn, by treating tiny non-stories like Watergate scoops. If there was a Pulitzer Prize for grudge journalism, he might win it one day. But otherwise, he's just wasting good trees and misusing professional journalists to settle his personal scores. He is enforcing the old saying "Don't throw rocks if you live in a glass house".

First came last Sunday's Front Page blockbuster, breathlessly reporting that I occasionally block people from my personal Facebook page, when I find their posts to be unacceptably nasty, misleading, redundant or off-point. Every American enjoys the right to speak freely. What a few chronically disgruntled critics also now want to claim is the "right" to be heard – the "right" to take over my social media platform and turn it into a tool for attacking me.

I had little to say in response to reporter questions, because it was all new to me and, rather than just responding off-the-cuff, I first wanted guidance from our Statehouse legal staff on whether or how this applies to me and my colleagues. But the Sentinel wasn't going to hold off publishing its massive scoop, until after our attorneys have some analysis to offer on whether one obscure court case in Virginia even has relevance in Colorado. So it devoted almost all of a lengthy front page story to the complaints of two or three of my critics, enraged because they can't take control of my personal Facebook page.

Predictably, the one-sided "news piece" was followed a day or so later by a second attack, this time from the editorial page, which the partisan publisher uses as his personal megaphone and machete. A journalist on staff was tasked with teeing-up the ball, so the publisher could take another opportunity to tee-off on me. That's par for the course these days with the Sentinel.

98.     Although it is unclear what would qualify as an "unacceptably nasty" Facebook comment by Senator Scott's standards, it is indisputable that Ms. Landman never used profanity, did not repeat herself, and was responding to issues raised by Scott himself on his Facebook page.

99.     In short, in the face of criticism by Ms. Landman and others, rather than responding substantively, Senator Scott blocked and banned certain constituents for the purpose

of excluding their critical views from the discussions taking place on his official Facebook page and arising from his official tweets.

**VI.     Senator Scott has hidden and deleted many public comments, including Ms. Landman's April 24, 2017 comment about his views of climate science.**

100.     On April 17, 2017, several days after Ms. Landman filed her ethics complaint, the Daily Sentinel ran another story about Senator Scott's social media blocking activities.

101.     For that story, Senator Scott admitted that he hid certain comments from public view because he viewed the content as "inappropriate," and claimed that there is nothing official about his social media accounts.  See https://www.gjsentinel.com/news/western_colorado/gj-residents-file-ethics-complaint-against-scott/article_a0ff8ba5-4875-51e1-9de1-4547cfac5166.html.

102.     In that same article, Senator Scott admitted to maintaining his social media accounts himself, but claimed that he only hides or blocks comments that are inappropriate or off subject, particularly if they are profane.  Id.

103.     Just one day later, Senator Scott told a different story.  On his Facebook post about these Daily Sentinel articles, he admitted that he banned or hid comments by certain "disgruntled critics" who he would not allow to "take control" of his Facebook page.  *See supra* ¶ 97.

104.     Senator Scott hid or deleted certain posts that he did not agree with.  He did so on the basis of those commenters' viewpoints, and in violation of their First Amendment rights.

105.     Ms. Landman is among those who had their comments deleted or hidden by Senator Scott prior to his August 18, 2017 post.

**VII.    The constitutional injuries inflicted on Ms. Landman are continuing.**

106.    Upon information and belief, shortly before Plaintiff initiated this action, Senator Scott unblocked Ms. Landman from his Twitter account.

107.    Upon information and belief, after Ms. Landman filed the original Complaint, Senator Scott unbanned her from his Facebook page and unblocked the Twitter account associated with Ms. Landman's blog.

108.    Senator Scott has not restored all of the commentary Ms. Landman posted on his official social media accounts, which he either deleted or hid.

## FIRST CAUSE OF ACTION

*Violation of 42 U.S.C. § 1983 (Deprivation of Plaintiff's Right to Free Speech Under the First Amendment to the United States Constitution)*

109.    Plaintiff restates and incorporates by reference all previous allegations.

110.    The interactive portions of Senator Scott's official Facebook page and Twitter account are both designated public forums.

111.    Ms. Landman was engaged in First Amendment-protected speech when she commented on Senator Scott's official Facebook page and Twitter account.

112.    Senator Scott banned Ms. Landman from his official Facebook page and blocked her on Twitter because of the critical viewpoints she expressed on his Facebook page. Senator Scott also hid and/or deleted commentary Ms. Landman posted on his official social media accounts based on her viewpoint. In doing so, Scott violated her right to freedom of expression by imposing a viewpoint-based restriction on her speech in a public forum.

113.    By acting under the color of state law to deprive Ms. Landman of her rights guaranteed by the Constitution and laws of the United States, Senator Scott has violated and continues to violate 42 U.S.C. § 1983.

114.    Senator Scott engaged in this conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Ms. Landman's constitutional rights.

115.    Senator Scott's actions and/or omissions caused, directly or proximately, Ms. Landman to suffer injury.

116.    Senator Scott's continuing refusal – even as recently as two weeks before this lawsuit was initiated – to restore Ms. Landman's ability to fully participate on Scott's social media accounts entitles her to declaratory and injunctive relief and nominal damages.

## <u>SECOND CAUSE OF ACTION</u>

*Violation of Article II, Section 10 of the Colorado Constitution*
*(Deprivation of the Right to Freely Speak, Write, and Publish Sentiments)*

117.    Plaintiff restates and incorporates by reference each of the previous allegations.

118.    The interactive portions of Senator Scott's official Facebook page and Twitter account are both designated public forums.

119.    Ms. Landman was engaged in speech protected under Article II, Section 10 of the Colorado Constitution when she commented on Senator Scott's official Facebook page and Twitter feed.

120.    Senator Scott banned Ms. Landman from his official Facebook page and blocked her on Twitter based on the critical viewpoint she expressed on his Facebook page.  Senator Scott also hid and/or deleted commentary Ms. Landman posted on his official social media accounts based on her viewpoint.  In doing so, Scott violated her right to freedom of expression by imposing a viewpoint-based restriction on her speech in a public forum.

121.    Senator Scott engaged in this conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Ms. Landman's constitutional rights.

122.    Senator Scott's continuing refusal – even as recently as two weeks before this lawsuit was initiated – to restore Ms. Landman's ability to fully participate on Scott's social media accounts entitles her to declaratory and injunctive relief and nominal damages.  This is particularly so given this conduct violates the First Amendment to the United States Constitution, and Article II, Section 10 of the Colorado Constitution provides even greater protection to the freedom of expression of Colorado citizens.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant and award her the following relief:

(a)  Declare that Senator Scott violated Plaintiff's rights under the First Amendment to the United States Constitution and Article II, Section 10 of the Colorado Constitution when he blocked and banned her from his Facebook and Twitter accounts and deleted or hid her commentary there on the basis of her viewpoint, and that those constitutional violations are continuing;

(b)  Enter an injunction requiring Senator Scott to unblock and unban Plaintiff from Facebook and Twitter and prohibiting him from blocking, banning, or similarly denying Plaintiff access to his official social media discussions in the future on the basis of her viewpoint;

(c)  Enter an injunction requiring Senator Scott to fully restore Plaintiff's commentary, which he previously deleted or hid from his official social media accounts on the basis of her viewpoint;

(d)  Nominal damages;

(e)  Reasonable attorneys' fees and costs; and

(f)  Such further relief as may be just and proper.


Dated:  July 1, 2019                                  Respectfully submitted,


                                                      */s/ Mark D. Wilding Jr.*
                                                      Ashley I. Kissinger #36639
                                                      J. Matthew Thornton #48803
                                                      Mark D. Wilding Jr. #50177
                                                      **BALLARD SPAHR LLP**
                                                      1225 Seventeenth Street, Suite 2300
                                                      Denver, Colorado  80202-5596
                                                      Telephone:  (303) 376-2407
                                                      Facsimile:  (303) 296-3956
                                                      kissingera@ballardspahr.com
                                                      thorntonj@ballardspahr.com
                                                      wildingm@ballardspahr.com


                                                      *IN COOPERATION WITH THE*
                                                      *AMERICAN CIVIL LIBERTIES UNION*
                                                      *FOUNDATION OF COLORADO*

                                                      Mark Silverstein, #26979
                                                      Sara R. Neel, #36904
                                                      ACLU Foundation of Colorado
                                                      303 E. 17th Street
                                                      Denver, Colorado 80203
                                                      Phone: (720) 402-3104
                                                      sneel@aclu-co.org
                                                      msilverstein@aclu-co.org


                                                      *Attorneys for Plaintiff Anne Landman*

## **VERIFICATION**

STATE OF COLORADO        )
                                   ) ss.

COUNTY OF ___MESA___   )

I, Anne Landman, being duly sworn, depose and state that I have read the foregoing VERIFIED AMENDED AND SUPPLEMENTAL COMPLAINT and, to the best of my knowledge, information, and belief, the information included therein is true and correct.

_Anne Landman_
Anne Landman


STATE OF COLORADO        )
                                   ) ss.

COUNTY OF _Mesa_    )

Subscribed and sworn to before me this _29_ day of June, 2019, by Anne Landman.

Witness my hand and official seal.

My commission expires: ___4-5-2021___.

_Therese Luellen_
Notary Public

THERESE LUELLEN
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20014010901
MY COMMISSION EXPIRES 04/05/2021

[SEAL]

- 42 -